Fossett *v.* Bearce.

---

## WILLIAM FOSSETT & *al. versus* JOHN BEARCE.

By the act of March 4, 1826, " to regulate the Alewive Fishery in Bristol," the fish committee chosen by the town, are to decide and determine whether the sluice ways in dams across the rivers and streams in that town, for the passage of fish, are good and convenient ; and so long as they act within the sphere of their duty, they are not liable as trespassers ; no one has the right to oppose them in the performance of their duties ; and their judgment and decision is conclusive, unless they are guilty of corruption, or palpably mistake their duties, even although, in the opinion of others, their decision was erroneous, and their proceedings unreasonably hard against the owners of such dams.

DEBT by the plaintiffs, as a fish committee of the town of Bristol, to recover the penalty provided in the seventh section of an act to regulate the alewive fishery in Bristol, passed March 4, 1826. The penalty was alleged to have been incurred by the acts of the defendant on May 10, 1845.

At the trial before REDINGTON, DISTRICT J. the plaintiffs proved, that they were chosen and sworn as a fish committee of the town of Bristol ; that they notified the defendant, that he had no sufficient fish way in his dam ; that the defendant

neglected and refused to open one ; that they proceeded upon the land of the defendant, for the purpose of opening a sufficient fish way through his dam, and were proceeding to do it ; and that the defendant resisted them in opening the dam for that purpose.

" It was proved, that when defendant built his dam and mill, in 1836, he erected locks on the inshore side of his mill, for the passage of fish. There was much testimony on both sides, as to the character and sufficiency of these locks ; the fitness of their locality ; the mode in which fish pass up locks ; the difficulty of their exit from the locks into the pond ; how many passed up these locks in former years, and in some of the last years ; what alterations had been made in the locks ; how they might be improved in their structure ; how fish locks were made in other streams ; and with what success ; and concerning the habits of fish.

" Also evidence where, in the judgment of experienced men, the passage way ought to be made ; some thinking that the locks were entirely unfit and useless, others thinking more favorably of them ; some thinking no repair or alteration could have made them a sufficient passage way ; others thinking they might be made sufficient with some alterations ; while others considered that there could be no sufficient passage way except at the bottom of the stream.

" No regulations, such as are named in the first section of the act, had ever been made in writing.

" REDINGTON, the District Judge, presiding at the trial, among other things, instructed the jury, that the trust reposed in the fish committee was to be exercised reasonably, with a regard to the rights of all persons concerned in the result of their proceedings ; that, in protecting the fishery, they could not rightfully disregard the interest of the mill owners ; that the fishery had a priority, but only to the extent of having good and sufficient sluice ways, for the passage of fish ; that beyond what is necessary for the securing and appropriating that superiority, the committee cannot impair the mill owners' possessions ; that, therefore, it is the right of the mill owner to elect

where the passage way should be made, provided it can there be made a good and sufficient one, without incurring unnecessary or unreasonable delay or expense. What constitutes a good and sufficient sluice way is a question of fact, not of law. In deciding that question, the jury, among other things, may take into consideration, what was the meaning of the Legislature. Before the passing of this act, it appeared in the evidence, that locks had been made for the passage of fish at the Knox dam and at the Damariscotta falls. The jury might consider whether the Legislature had heard of those locks. And whether they thought that locks upon that plan, would answer at the Bristol dam. That a reasonable construction must be given to the terms, "good and sufficient sluice ways." That the law could not determine whether they should be formed by locks or by openings in the dam to the bed of the stream. That a sluice way may be any opening in a dam by which a current of water is let off, whether at the bed or at the surface of a stream. That the jury should take into view, among other things, the size and rapidity of the river, and the quantity of fish therein.

" The judge was requested by plaintiffs, to instruct the jury, that by the statute, the fish committee are constituted the judges of what are good and sufficient sluice or passage ways for the passage of alewives; and that, if on the 10th of May, 1845, there was not, in the opinion of the fish committee, a good and sufficient passage way, or sluice for alewives, through the defendant's dam, then the fish committee had a right to open a good and sufficient sluice way for the passage of fish through the same, even if in the opinion of others the defendant's fish ways were sufficient.

" The judge did not give that instruction, but did instruct the jury, that the opinion and proceedings of the committee must be presumed to have been right, unless that presumption be repelled by proof. That if the proof here overcame that presumption, and satisfied the jury that the opinion of the committee was erroneous, and their proceedings unreasonably hard against the defendant, in attempting to open the passage way at

the flume, then his acts of resisting the committee in that attempt would not make him liable in this action.

" The judge further instructed the jury that if the committee knew that defendant preferred to have the passage made where his fish way was, because less injurious to him than at the wasteway flume, and if it could have been made there without unnecessary or unreasonable expense or delay, he would be justified in resisting their putting it at the place of said flume, but that the burden of proving these facts was on the defendant.

" Whilst giving the charge the judge was requested by defendant's counsel to instruct the jury that the action could not be maintained, because the committee had never, in writing, adopted any " *regulations*," such as the defendant's counsel insisted that the first section of the act requires. The judge expressed doubt whether such regulations were not pre-requisite, especially as the regulations, which might be adopted by the committee, seem subject to be restricted or limited by vote of the town ; and it might be difficult for the town to act upon unwritten regulations. But, on considering the matter, he declined to give that instruction, because it might deprive the parties of the opportunity of having the facts settled by the jury, after so long a trial had been held for that purpose, and the defendant could avail himself of the omission so to charge, if the verdict should be against him, upon the other facts in the case.

" The verdict was for defendant. The judge propounded to the jury some questions in writing, which, with the answers are to be copied and made a part of the case.

" To the foregoing instructions and opinions and rulings, and omissions to rule as the plaintiffs requested, the plaintiffs except,

" By E. Smith and M. H. Smith, their attorneys."

" The foregoing exceptions are allowed prior to the final adjournment of the Court, the same being reduced to writing and presented for allowance and found to be correct.

" Asa Redington, Presiding Judge."

*Questions to the jury and answers returned.* — " 1. Was the sluice way, which Bearce had prepared, good and sufficient for the passage of alewives.

" *Ans.* It was not.

" 2. Taking into view the size of the stream and the quantity of fish expected to run there, if Bearce's sluice way was not good and sufficient, either on account of the shoalness of the water at the foot of it ; or on account of the bottom being made of wood; or on account of the darkness; or on account of the distance between the boxes ; or on account of the narrowing of the sluice way at its upper portion; or on account of the depth of water over the gate ; or on account of the erections in the pond above the gate ; or on any other account, could it have been made good and sufficient by repairing or altering it without unreasonable delay or expense ?

" *Ans.* It could.

" 3. Was it understood by the fish committee that Bearce wished the fish way to be at the place of his fish way, and that it would be more injurious to him to have it put elsewhere ?

" *Ans.* It was.

" 4. Taking into view the rights of the town and also the rights of the mill owners, was it the duty of the fish committee in the fair and faithful exercise of their trust, to have the fish way at the place where Bearce had prepared for it ; or was it their duty to open a fish way to the bed of the river, between Bearce's and Hanly's mills ?

" *Ans.* It was their duty to have the fish way where Bearce had made it.

" 5. When the committee hoisted Bearce's gate on 10th of May, was it, or was it not, their purpose unnecessarily to oppress and injure him ?

"*Ans.* —————— ( None given.)

" 6. In order to give due protection to Bearce's rights, and also to rights of the town and of the public, was it, or was it not, reasonable that the committee should cut a passage way through the dam down to the bed of the stream ?

" *Ans.* It was not reasonable."

*E.* and *M. H. Smith* argued for the plaintiffs, contending that the rulings and instructions of the District Judge were erroneous in many particulars, among which were : —

The instructions were clearly erroneous, inasmuch as by the course adopted by the Judge, the judgment and opinion of the fish committee, in the discharge of their duties, might be overruled by the opinion of any other persons. By the instructions to the jury, the defendant was to be justified in resisting the committee in the discharge of their duty, if he could bring others to testify, that in their opinion the committee erred in judgment. It was not the opinion and judgment of the tribunal, provided by the act, which was to stand, but the opinion of others, if the course permitted by the Judge at the trial was justifiable.

The instructions and rulings of the Judge at the trial, gave the defendant the right to select the place where the sluice way should be made, and took it from the committee.

The Judge not only submitted to the jury the right to determine the construction to be given to the law, but expressly informed them, that they were at liberty to disregard the common meaning of the language used, and might consider that the legislature intended that certain old sluice ways should be the standard to govern the committees, which were not named or alluded to in the act.

The counsel contended, that these decisions and rulings were in direct opposition to the plainest principles of law, and wholly opposed to the language, spirit and object of the act.

They also made various other objections to the course pursued by the Judge at the trial.

*Ruggles,* in his argument for the defendant, said that the fish acts though public, were not general laws. They are diverse in their terms and local in their application. Each act is to be construed by itself, and its construction cannot be controlled by other acts applicable to other localities. These acts are to be construed with reference to the description and character of the stream where the fishery is established and regulated ; the amount of fish likely to run in the river ; and the

number and description of mills and machinery with which the acts may come in competition. Mills and the right of flowage are protected by law for the public good. Mills are as important to the public as alewives. It is necessary therefore to a right understanding of these local acts, regulating fisheries, that the peculiarities of the stream; the number and importance of the mills; how they will be affected by this or that description of fish way; to what extent they may be allowed to interfere with the mills, without sacrificing more of the public advantage by their destruction, on the one hand, than could possibly be acquired by means of the fishery on the other, should be considered. The Legislature is presumed to have these matters in view, in framing their acts; and it is no less true, that to the just construction of these acts, it is as necessary, that the courts should have the same facts before them.

The counsel for the defendant, contended, that the whole of the proceedings at the trial in the district court, were justifiable and legal. He cited and commented upon the cases, *Wales* v. *Stetson*, 2 Mass. R. 146; *Richards* v. *Daggett*, 4 Mass. R. 537; *Commonwealth* v. *Kimball*, 4 Mass. R. 370; *Stoughton* v. *Baker*, 4 Mass. R. 528; *Briggs* v. *Murdock*, 13 Pick. 305, contending that the case last named ought not to be considered as conflicting with the others cited, or as inconsistent with the rulings and instructions of the District Judge in the present case.

The opinion of the Court was drawn up by

TENNEY J. — This is an action by the plaintiffs, as a fish committee of the town of Bristol, against the defendant, for an alleged resistance and opposition to them in the performance of their duties, in an attempt to open a sluice way through his dam for the passage of Alewives. The sluice way, which the defendant had previously prepared, was not good and sufficient. The plaintiffs introduced evidence of a notice to the defendant to make a passage way; and that on his failing to comply with the requirement, proceeded to prepare one themselves, and therein they were resisted and opposed by him.

The statute, under which this action is brought, provides that the town of Bristol shall choose a committee, not exceeding five nor less than three in number, whose duty it shall be to cause to be kept open in any river or stream passing through said town, at all places where dams are or may be erected, for the passage of Alewives, good and sufficient sluice ways for the passage of said fish through the same; and said sluice ways shall be under such regulations as the committee may deem proper for the interest and benefit of the town, subject to such restrictions and limitations as the town may by their votes impose. And the committee shall be sworn to the faithful discharge of the duties required of them by law. Special laws of 1826, § 1.

By the 7th section of the same statute, the committee shall in no respect be considered as trespassers, in passing over the lands of individuals, in any part of said town, in the execution of the duties of their office; and any person resisting or opposing said committee, or either of them, in the performance of their duties aforesaid, shall forfeit and pay a sum not less than ten dollars, nor more than twenty dollars.

The committee are entrusted by the act with a duty, which they are not at liberty to omit. The passage ways, which they are to cause to be opened, are to be *good and sufficient*, for the purpose intended. The whole subject is intrusted to their judgment and discretion, excepting where the town by a corporate vote restrict or limit their exercise. It is for them to determine, whether the sluice ways are good and sufficient. The statute does not contemplate that the question of their goodness and sufficiency shall be settled by any other. So long as they are acting within the sphere of their duty as a committee, or members thereof, they are protected from all liability as trespassers, in passing over the lands of individuals. No one has any right to oppose them in the performance of their duties. The judgment of others, in reference to what is intrusted to them, is not to be substituted for that of the committee. Although it may be thought they may have erred in the exercise of their judgment and have acted indiscreetly in

the discharge of their trust, it does not follow, therefore, that their acts are to be treated as trespasses or unauthorized, unless they are guilty of corruption, or palpably mistake their duties. If the jury were satisfied, that the opinion of the committee was erroneous, and their proceedings unreasonably hard against the defendant in attempting to open the passage way, such alone was not sufficient to exclude them from protection of the statute, under which they professed to act, and excuse the defendant in resisting them. The case not having been submitted to the jury according to this principle, the

*Exceptions are sustained.*